# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| RENEE SHEDELBOWER, § | |
| *Plaintiff* § | |
| § | SA-24-CV-00384-XR |
| -vs- § | |
| § | |
| H-E-B GROCERY COMPANY, § | |
| PARKWAY TRANSPORT, INC., § | |
| *Defendants* § | |

## ORDER ON MOTION TO COMPEL ARBITRATION

On this date, the Court considered Defendants' motion to compel arbitration and dismiss this case (ECF No. 9), Plaintiff's response (ECF No. 11), and Defendants' reply (ECF No. 12). After careful consideration, the Court issues the following order.

## BACKGROUND

Plaintiff Renee Shedelbower alleges employment discrimination and retaliation claims against Defendants H-E-B Grocery Company ("HEB") and Parkway Transport, Inc. ("Parkway") under Title VII of the Civil Rights Act, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). *See* ECF No. 1.

Plaintiff worked as Safety Specialist for an HEB grocery store in Kirby, Texas, from sometime in 2017 until her termination in January 2023. *Id.* ¶ 12. It is not clear whether Plaintiff was an employee of HEB, Parkway, or both during her tenure as a Safety Specialist. For her part, Plaintiff alleges that HEB and Parkway are a "single enterprise" under Texas law or, in the alternative, HEB and Parkway treated her as a joint employee under the shared employee doctrine. *See* ECF No. 1 ¶¶44–45. Apparently, during pre-suit EEOC proceedings, HEB took the position that Ms. Shedelbower was employed by Parkway rather than HEB. *See id.* ¶ 44; *see also* ECF No. 11 at 2.

Regardless of which entity directly employed Plaintiff, it is undisputed that, when she submitted her electronic employment application in April 2017, Plaintiff confirmed (by typing her name and clicking "Save and Continue") that she accepted HEB's Agreement to Arbitrate, stating:

> H-E-B AND I HEREBY AGREE TO SUBMIT ANY CONTROVERSY OR CLAIM ARISING OUT OF OUR RELATING TO MY HIRING, EMPLOYMENT, BENEFITS, AND/OR SEPARATION OF EMPLOYMENT OR ANY OCCUPATIONAL OR ONTHE- JOB INJURY/ILLNESS TO, AND RESOLVED EXCLUSIVELY BY, FINAL AND BINDING ARBITRATION UNDER THE FEDERAL ARBITRATION ACT[.]

ECF No. 9-1 at 15–16, 20, 28; *see id.* at 3–4.

After beginning her employment, Plaintiff again agreed to arbitrate all claims pertaining to her employment in September 2019 by completing a workplace training entitled "2019 Work Injury Benefit Plan Enhancements." The training specifically addressed HEB's Work Injury Benefit Plan and the employee's corresponding agreement to arbitrate claims or disputes. ECF No. 9-2 at 57. The training included a video portion that provided notice of the employees' agreement to arbitrate any disputes with HEB. *Id.* at 10–11. To complete the training, Plaintiff acknowledged that she received and reviewed the Summary Plan Description and the arbitration agreement. *Id.* at 21. Like the application agreement, the Work Injury Benefit Plan agreement required arbitration of any claims arising out of Plaintiff's employment or separation of employment with HEB. *Id.* at 26.

Over Plaintiff's opposition (ECF No. 11), both Defendants now seek to compel arbitration (ECF No. 9).

**DISCUSSION**

**I.      Legal Standard**

The Fifth Circuit has established a two-step inquiry in determining whether the parties have agreed to arbitrate a claim. "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). In the absence of a valid clause delegating the threshold issue of arbitrability to the arbitrator, both steps are questions for the Court. *Id.* Where the parties' contract delegates the question of arbitrability to the arbitrator, however, a court possesses no authority to decide whether the parties' dispute falls within the scope of the agreement. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *TRC Envt'l Corp. v. LVI Facility Servs., Inc.*, 612 F. App'x 759, 762 (5th Cir. 2015). Hence, the party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

"Section 2 of the FAA provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996) (quoting 9

U.S.C. § 2). "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original) (interpreting Section 2). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Casarotto*, 517 U.S. at 687.

## II. Analysis

### A. Whether the Arbitration Provision Is Valid and Enforceable

In conducting the first inquiry, whether there is a valid arbitration agreement, courts "distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551 (5th Cir. 2018) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010) and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)). Federal courts have authority where a party questions the "very existence of a contract" containing the arbitration agreement. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). Whether the parties entered a valid arbitration contract turns on state contract law. *Kubala*, 830 F.3d at 202; *see Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) ("[I]n determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement.").

Texas law provides that the party attempting to enforce an arbitration agreement must show the agreement meets all requisite contract elements. *Specialty Select Care Ctr. of San Antonio, L.L.C. v. Owen*, 499 S.W.3d 37, 43 (Tex. App.—San Antonio 2016). Under Texas law, "[t]he elements needed to form a valid and binding contract are (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5)

4

execution and delivery; and (6) consideration." *Id*. When an arbitration agreement is part of an underlying contract, the rest of the agreement provides the necessary consideration. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005).

Plaintiff does not dispute that she entered into a binding agreement to arbitrate claims arising out of her employment—at both the application stage and through a Work Injury Benefit Plan implemented during her employment. Nor does she assert that her claims are outside the scope of the arbitration agreements. Rather, she contends that the agreements are inapplicable to her joint claims against HEB and Parkway because the arbitration agreements refer only to HEB. ECF No. 11 at 4.

While the employment application arbitration agreement does not define "HEB," the Work Injury Benefit Plan expressly defines HEB to include "divisions and subsidiaries." ECF No. 9-2 at 26. The agreement binds her to arbitrate any claims arising out of her employment or separation of employment with HEB and its divisions and subsidiaries, including Parkway.[1] ECF No. 9-2 at 41; *see Green v. Serv. Corp. Int'l*, 333 F. App'x 9, 11 (5th Cir. 2009) (permitting nonsignatory affiliated entity to compel arbitration where plaintiff agreed to arbitrate claims against signatory and its affiliates).

Arbitration is also warranted under the doctrine of intertwined-claims estoppel, which provides that a nonsignatory defendant can compel arbitration where it has "a close relationship with one of the signatories [to the arbitration agreement] and the claims are intimately founded in and intertwined with the underlying contract obligations." *Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233, 237 (5th Cir. 2021) (quotation marks omitted) (citing *Hays v. HCA Holdings, Inc.*, 838

---

[1] The rest of the Work Injury Benefit Plan provides the necessary consideration for the arbitration agreement. *Kubala*, 830 F.3d at 203 ("an at-will employee who continues working with notice of a new arbitration policy is deemed to have accepted the policy as a matter of law"). *In re AdvancePCS Health L.P.*, 172 S.W.3d at 607.

5

F.3d 605, 610 (5th Cir. 2016)). "Courts have employed this exception to dismiss 'strategic pleading' that seeks to avoid arbitration." *Hays*, 838 F.3d at 610.

In *Hays*, the Fifth Circuit made an *Erie*-guess as to whether, under Texas law, a plaintiff could pursue employment claims against some defendants in court when he had a binding arbitration agreement as to other defendants. The court emphasized that the plaintiff's pleadings set out "virtually indistinguishable" factual allegations, treating two different defendants in arbitration and litigation "as a single unit" and "as if they were interchangeable." *Id.* at 612–13. Because the plaintiff did not differentiate between the defendants and his claims "relate[d] to his alleged wrongful termination, intertwined with the underlying contractual obligations of the Agreement," the court held that the claims were arbitrable under intertwined-claims estoppel. *Id.* at 613.[2]

Recently, the Fifth Circuit again upheld an order employment claims to arbitration under intertwined claims estoppel in *Trujillo*, 846 F. App'x at 237. There, the plaintiff asserted identical discrimination claims against her employer (a staffing company and signatory to the arbitration agreement) and the company at which she was assigned to work (a nonsignatory to the agreement). Because the plaintiff asserted discrimination claims against both entities related to her employment relationship, the panel found that the parties, contracts, and controversies were tightly related. *Id.* As a result, intertwined-claims estoppel applied to compel the entire matter to arbitration. *Id.*

Here too, the parties and claims asserted are closely related. Plaintiff asserts identical claims against HEB and Parkway—a wholly owned subsidiary of HEB—referring to Defendants throughout her Complaint and response brief as "H-E-B and/or Parkway Transport, Inc." *See*

---

[2] In 2018, the Texas Supreme Court in *Jody James Farms, JV v. Altman Group, Inc.* acknowledged the existence of intertwined claims estoppel, as well as the Fifth Circuit's *Erie*-guess that it applies in Texas. 547 S.W.3d 624, 639 (Tex. 2018). But the *Jody James* Court declined to decide the question since, even the doctrine exists in Texas, the facts of that specific case did not support its application. *Id.*

*generally* ECF Nos. 1, 11. Because the parties, arbitration agreements, and controversies are wholly intertwined, Texas law permits Parkway, as a nonsignatory, to compel Plaintiff to arbitrate her employment claims against both HEB and Parkway.

Because Plaintiff entered into two valid arbitration agreements covering the types of employment claims she brings against HEB and Parkway, her claims must be compelled to arbitration.

### B. Whether the Case Should be Dismissed or Stayed Pending Arbitration

The final issue is whether Plaintiff's claims should be stayed pending resolution of the arbitration or dismissed. The FAA provides that courts shall enter a stay pending arbitration "on application of one of the parties." 9 U.S.C. § 3. The Supreme Court recently confirmed, that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024)

Because Plaintiff has requested a stay pending arbitration, ECF No. 11 at 6, the Court must stay the proceeding.

### CONCLUSION

For the reasons set forth herein, Defendants' motion to compel and dismiss this case (ECF No. 9) is **GRANTED IN PART** and **DENIED IN PART**.

Defendants' motion to compel arbitration is **GRANTED**, and the parties are **ORDERED** to proceed to arbitration of Plaintiff's claims against both Defendants.

Defendants' motion to dismiss Plaintiff's claims with prejudice is **DENIED**. This case and all pending deadlines are **STAYED** pending the completion of arbitration.

The Court further finds this case is appropriate for administrative closure pending the outcome of arbitration. *See Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2014) ("District courts frequently make use of this device to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending). The effect of an administrative closure is no different from a simple stay . . . .").

The Clerk's office is therefore **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case pending further order of the Court. Though administratively closed, this case will still exist on the docket of this Court and may be reopened upon request or on the Court's own motion. Parties may continue to file motions and documents in the case.

The parties shall file an advisory every 180 days concerning the progress of the arbitration, **beginning on April 23, 2025**, and shall file an advisory within 14 days of completion of the arbitration concerning whether the case can be dismissed.

It is so **ORDERED**.

**SIGNED** this 25th day of October, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE